MELISSA HOLYOAK, First Assistant United States Attorney (# 9832)
TODD C. BOUTON, Assistant United States Attorney (# 17800)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone:  (801) 524-5682
todd.bouton@usdoj.gov

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE SANCHEZ-JUAREZ,<br><br>Defendant. | **UNITED STATES' POSITION REGARDING DETENTION**<br><br><br>Case No. 2:26-cr-00158-DBP<br><br>Magistrate Judge Dustin B. Pead |

**INTRODUCTION**

This case involves a male-female couple who brazenly helped a handcuffed, suspected illegal immigrant man evade arrest by federal agents (ICE) at a local Home Depot parking lot by (1) spiriting him away in their Volkswagen Golf while a border patrol officer chased after him; (2) purchasing bolt cutters and cutting off his handcuffs; and (3) posting about it online as they cursed ICE and trumpeted their "heroism."

Mr. Sanchez Juarez is the male half of the charged partners in crime.

The United States is bringing a single charge against Mr. Sanchez Juarez and his codefendant girlfriend under 18 U.S.C. §§ 641 and 2 for Theft, Conversion, and Destruction of Government Property, and Aiding and Abetting. The theft, conversion, and destruction of government property relate to the theft, conversion, and destruction of the handcuffs.

☒   **The United States is not seeking detention. But it is seeking conditions of release.**[1] The United States contends that the defendant (Mr. Sanchez Juarez) should be

---

[1] Where a defendant is charged with a federal Class A misdemeanor, conditions of release are appropriate. 18 U.S.C.

released on the following conditions:

- He not commit any other Federal, State, or local crime. 18 U.S.C. § 3142(c)(1)(A);

- He be required to report to an assigned pretrial officer. 18 U.S.C. § 3142(c)(1)(b)(vi);

- He be required to maintain employment, or, if unemployed, actively seek employment. 18 U.S.C. § 3142(c)(1)(b)(ii);

- He be required to surrender his passport, if any. 18 U.S.C. § 3142 (c)(1)(b)(xiv);

- He be ordered not to discuss this case with his codefendant girlfriend. 18 U.S.C. § 3142(c)(1)(b)(xiv); and

- He not interfere with any other attempted arrests of illegal immigrants. 18 U.S.C. § 3142(c)(1)(b)(xiv).

☐    Detention is not at issue because this is an immigration reentry case where the defendant has opted to participate in the fast-track program, which includes agreeing to detention for the pendency of this case.

☐    The United States moves for detention based on current information.

The United States' positions in this preliminary pleading could change after reviewing the Pretrial Report or learning of additional evidence.  The United States reserves the right to assert positions even if the boxes next to those positions are not checked below, raise additional arguments, and file additional pleadings in support of detention.

The United States' motion for detention is:

☐ Pursuant to 18 U.S.C. § 3142(f)(1) because defendant is charged with:

☐ **(A)** a crime of violence (*see* 18 U.S.C. § 3156(a)(4)), a violation of 18 U.S.C. § 1591 (sex trafficking of children), or an offense under § 2332b(g)(5)(B) (specific enumerated crimes) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☐ **(B)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(C)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

---

§ 3142(a); 18 U.S.C. § 3156(b)(2) (defining "offense" to exclude Class B and C, but not Class A misdemeanors).

☐ **(D)** any felony if the defendant has been convicted of two or more offenses described in (a) through (c) above, or two or more State or local offenses that would have been offenses described in (a) through (c) above if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☐ **(E)** any felony that is not otherwise a crime of violence but involves: **(i)** a minor victim; **(ii)** the possession or use of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250;

### OR

☐ Pursuant to 18 U.S.C. § 3142(f)(2) because the case involves:

☐ **(A)** a serious risk the defendant will flee; **or**
☐ **(B)** a serious risk the defendant will obstruct or attempt to obstruct justice, or threaten, injure, intimidate, attempt to threaten, injure or intimidate a prospective witness or juror.

### Procedure

The defendant may seek a continuance of the detention hearing of up to five days, and the United States may seek a continuance of up to three days. 18 U.S.C. § 3142(f). During any such continuance, the defendant shall be detained. *Id*. The rules concerning the admissibility of evidence do not apply at the detention hearing. *Id*. The United States has the burden of persuasion by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community or by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required. *Id*.; *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

### Rebuttable Presumption

☐ A rebuttable presumption applies and the defendant bears the burden to produce some credible evidence to rebut this presumption. The United States acknowledges that it retains the burden of persuasion. The statutory presumption applies:

☐ Pursuant to 18 U.S.C. § 3142(e)(2) *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because:

**(A)** the defendant has previously been convicted of a Federal offense that is

3

described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; *and*

**(B)** the defendant committed that offense while on release pending trial for a Federal, State, or local offense; *and*

**(C)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for that, whichever is later.

☐ Pursuant to 18 U.S.C. § 3142(e)(3) *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(A)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(B)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(C)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 or more is prescribed;

☐ **(D)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(E)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

### Factors to Be Considered

The United States may present arguments, proffer evidence, or provide testimony at the scheduled detention hearing supporting the *proposed conditions of release* for the defendant including, but not limited to:

☒ The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm or destructive device. (18 U.S.C. § 3142(g)(1)).

*[See next page]*

1.    **THE NATURE OF THE OFFENSE**

1.1    **On October 8, 2025, Border Patrol agents appeared at a local Home Depot to arrest some suspected previously deported illegal aliens.**

On October 8, 2025, several federal law enforcement officers from United States Customs and Border Protection (CBP), Border Patrol, and the Office of Field Operations attempted a targeted enforcement action at a local Home Depot in Salt Lake City.[2] Before going to the Home Depot, the officers had identified four previously deported aliens who were expected to be in the Home Depot parking lot. So, the officers went to the parking lot to find and arrest the aliens so they could place the aliens in removal proceedings.

1.2    **As federal agents were arresting one of the suspects, the suspect fled across the street, and the defendants spirited him away in their car.**

After federal agents identified one of their targets in a group of men in the parking lot, the agents converged on the group. As the agents approached, about two or three of the males in the group fled. A Border Patrol Agent ordered an unidentified male (Subject 1) not to leave. But the man attempted to depart. The agent later stated that Subject 1 looked like one of the four targets they knew to be previously deported aliens.

Subject 1 continued to attempt to depart until the same Border Patrol Agent handcuffed him and placed him in the center-rear seat of his vehicle. The agent then turned to assist an  officer with placing an additional detained subject (Subject 2) in the seat next to Subject 1. Subject 2 resisted the other officer's attempt and went to the ground to avoid being put in the vehicle. This drew the Border Patrol Agent's attention to Subject 2. While the agent turned to Subject 2, Subject 1 escaped from the car. Still handcuffed, with his hands behind his back, Subject 1 fled south into the 2100 S westbound travel lanes at the busy intersection by the parking lot, and then east along the sidewalk. An officer followed Subject 1 as he fled but had to wait for traffic to subside before she could cross the street after him. As she approached Subject 1, she saw him get into a white Volkswagen Golf which had stopped for the light on the northeast corner of 2100 South and 300 West in the westbound lanes. The white Volkswagen then sped away to the west on 2100 South.

Subject 1's escape from lawful arrest and his flight in the white Volkswagen were captured by surveillance cameras in the area and by bystanders. And video of the escape was posted on social media. Some misguided people cheered his escape and evasion.

Defendants Luna and Sanchez Juarez were the ones driving and riding in the white Volkswagen that helped Subject 1 to escape from his lawful arrest.

---

[2] This Home Depot is located at 328 West, 2100 South in Salt Lake City, Utah.

### 1.3     After the defendants helped the handcuffed suspect escape, they bragged about doing so online and posted a video of cutting off his handcuffs.

After Subject 1 escaped from federal agents, with the help of those in the white Volkswagen, someone sent a video of his escape and flight to "SLCScoop." SLCScoop is an Instagram page which serves as a crowd-sourced feed for police activity and event announcements. SLCScoop posted the video and titled it "ICE RAID AT HOME DEPOT SALT LAKE CITY" (Ice Raid Video).

In addition to footage of Subject 1's escape, the Ice Raid Video included footage of someone using bolt cutters to cut the chained portion of a pair of handcuffs attached to a man matching the clothing description of Subject 1. SLCScoop also reposted the following statement made by the Instagram profile designated "[redacted]_kelzie":

> "The guy in the video has papers of residence and they did not care. Me and my man picked him up as he was running because we knew him from when [*sic*] we used to work and we brought him to safety and made sure he was okay. They hit him and threw him at the car. He has a gash on his arm and a black eye. They are taking people for just looking the part. Please everybody, be careful. They will use lethal force." (cleaned up some).

This same "[redacted]_kelzie" Instagram profile was found to belong to Sanchez Juarez's codefendant and girlfriend, Kelzie Ryann Luna. This was confirmed based on the pictures posted in Luna's  stories, the pictures on her Facebook page, the listing of "[redacted]_kelzie" and Luna's birthdate on her Facebook page, and based on Luna's driver license records and picture.

Luna also reposted the original SLCScoop video with a caption stating, tellingly, *"Fuck ice viva Mexico [4 praying hands emojis]."* (Ex. 1) (Italics added). Local records checks further show that Luna previously worked at the McDonald's restaurant that shares a parking lot with the same Home Depot where Subject 1 escaped from federal agents.

### 1.4     Luna also made several other incriminating admissions on her Instagram account that show the defendants' guilt.

With a state court search warrant, an HSI Special Agent obtained additional posts from Luna's Instagram account which implicate her and Sanchez Juarez, in the alleged crime. These posts reveal the following:

**Voice Message: unified_message_xx0688**

Luna lists a timeline and information regarding her involvement, her location, and details later confirmed by investigators through CCTV footage.

Luna states, "the guy that they picked up that we took, he had uh papers, he showed us he has residency so they weren't even checking bro"

**Voice message: unified_message_xx9982**

"We literally went to George's mom's house."

Discussion about immigration's authority for detention.

**Voice message: unified_message_xx4160**

LUNA: No its just the one and me and George we were driving down the road of the 21st by the McDonald's we were at the Chevron actually and **he came and he came to the window where I was at dijo "ayuda me ayuda me por favor" [in Spanish this translates to "he said 'help me help me please'"] and we said get the fuck in and then we took him and we took him to his friends house and we went and bought bolt cutters first though and we cut that shit off of him** but now I have people on there calling me by my full name like ready to get me arrested I said, its okay, fuck it, I told George I said I hope you mom will take my kids.
JUAREZ: I'll bail you out
LUNA:  He said he's gonna bail me out, you gonna help bail me out girl? Nah I'm just kidding.
JUAREZ: We don't care at this point you know
LUNA: We don't really care we're just chillin' livin' life…. Two of them are not but they got a lot of them the guy he told us they got at least 10 people and two of them escaped. . . .
JUAREZ: he was telling us he's one of our friends too and we don't leave friends behind.
LUNA: he was one of the ones who would always come in he was not an asshole he was one of the nice ones.

(bold added); (*see also* Ex. 1).

**Thread (xx5316)**
[redacted]: Hey girl you should take out the part where you helped!! I was looking at the racist comments on the video and there were a couple people that wanted to find who helped him!!
LUNA: I know I had to delete my comment somebody came at me using my government name but honestly I think George might be in more danger cause they have his license plates.

**1.5    HSI identified Sanchez Juarez as the driver and owner of the getaway car—and thus as one of the people who cut off the HSI handcuffs.**

Homeland Security Investigations Salt Lake City (HSI-SLC) eventually identified George Sanchez Juarez as the driver and owner of the Volkswagen Golf used to help the suspected illegal alien escape from arrest. Sanchez Juarez is the registered owner of a white Volkswagen Golf bearing the Utah license plate identified on the getaway car. They also verified his identify through other means.

Luna also posted a story on her Instagram with her wearing an EZPawn nametag. An HSI Agent checked EZPawn stores in the area and located the Volkswagen Golf in the parking lot of a local EZPawn store. The same agent also verified that the rear window decals matched the ones visible in the trailer camera from the initial escape event. The same agent also observed Luna inside the EZPawn store. The agent checked the parking lot on multiple other occasions and located the vehicle in the parking lot as well.

Along with the videos, the surveillance, and the other posts, this evidence allowed law enforcement to conclude with confidence that Luna and Sanchez Juarez were the ones who drove the white Volkswagen getaway car and who cut off the handcuffs that federal law enforcement agents placed on the suspected illegal alien.

**1.6    By spiriting away the handcuffed alien, Luna and Sanchez Juarez stole government property (the handcuffs) and then converted and destroyed government property when they cut off the handcuffs with bolt cutters.**

The handcuffs on the alien were government property. They belonged to HSI—a federal agency—and were issued to the officer who handcuffed the suspected illegal alien. When Luna and Sanchez Juarez spirited the alien away in their getaway car, with those handcuffs on him, they stole those handcuffs (and the alien). And when they bought bolt cutters and cut off the HSI handcuffs, they converted and destroyed government property.

☒  The weight of evidence against the defendant.  (18 U.S.C. § 3142(g)(2)).

See above.

☒  The history and characteristics of the defendant including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning court proceedings.  (18 U.S.C. § 3142(g)(3)(A)).

Mr. Sanchez Juarez has no identified criminal history. But he is a danger to the public. He and his girlfriend, Luna, brazenly helped a handcuffed suspect flee from federal law enforcement agents in the middle of an arrest. They bought bolt cutters and

8

cut off the suspect's handcuffs. And then Luna bragged online about helping him evade arrest. When Luna acknowledged she might get arrested and lose her children, Sanchez Juarez told her that he would "bail her out." They brushed off their crime and showed no remorse.

☐  Whether, at time of the current offense or arrest, the defendant was on probation, parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.  (18 U.S.C. § 3142(g)(3)(B)).

☐  The nature and seriousness of danger to any person or to the community that would be posed by the defendant's release.  (18 U.S.C. § 3142(g)(4)).

☐  The defendant's lack of legal status in the United States.  The defendant's legal status is:

☐  How the defendant would be subject to removal or deportation after serving a period of incarceration.

☐  The defendant's significant family or other ties outside of the United States.

☐  The defendant's use of aliases or false documents.

☐  The defendant's prior attempts to evade law enforcement.

☐  How the defendant's proposed residence, employment, or proposed treatment programs have not been verified.

☐  The defendant's prior failures to appear for court proceedings.

☐  Other reasons including:

### Victim Notification

☐  The United States has notified any identified victim, or attempted to do so, pursuant to 18 U.S.C. § 3771.

The position of the victim(s) on the detention of the defendant is:

☐  The victim(s) in this matter seek(s) a no contact order.

☒  This matter does not involve a victim requiring notification.

DATED this 20th day of May, 2026.

MELISSA HOLYOAK
FIRST ASSISTANT UNITED STATES ATTORNEY
 */s/ Todd C. Bouton*
TODD C. BOUTON
Assistant United States Attorney

9